1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

MASON DABISH and BILL BOHR
individually and on behalf of all others
similarly situated,

                                Plaintiffs,

v.

MUSCLEPHARM CORP., a Nevada
Corporation,

                                Defendant.

Case No.:  3:15-CV-02848-CAB-RBB

**ORDER GRANTING MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

[Doc. No. 29]

19
20
21
22

        This matter is before the Court on the motion to dismiss of Defendant MusclePharm
Corporation ("MusclePharm").  The motion has been fully briefed and the Court deems it
suitable for submission without oral argument.  For the reasons set forth below, the motion
is granted.

23

I.        **Allegations in the Complaint**

24
25
26
27
28

        MusclePharm manufactures and sells dietary supplements and sports nutrition
products, including various pre- and post-workout powders.  Plaintiff Mason Dabish
purchased one of these powders, called MusclePharm Assault Pre-Workout Powder, on or
around June 10, 2015, in San Diego, California.  Plaintiff Bill Bohr, meanwhile, purchased

MusclePharm Arnold Schwarzenegger Series Iron Cre3 and Iron Pump supplements in November 2015 in Wilmette, Illinois.

The wrongdoing alleged in the FAC falls into two categories.  First, the FAC alleges that MusclePharm did not comply with requirements of the Federal Food, Drug, and Cosmetic Act (the "FDCA") for the sale of the Class Products.  Specifically, Plaintiffs claim that the Class Products contain new ingredients and that MusclePharm did not provide the United States Food and Drug Administration (the "FDA") with a "75-Day Premarket Notification" as required by the FDCA for such ingredients.  According to the FAC, this failure means MusclePharm's sale of the Class Products was illegal and that the Class Products "have no economic value and are worthless as a matter of law." [Doc. No. 26 at ¶ 18.]  Further, Plaintiffs allege that if they had "known the Class Products were not approved as safe by the FDA, they would not have purchased such Products." [*Id.*]

Second, the FAC alleges that statements on the labels of the Class Products describing the ingredients and their benefits are misleading and deceptive because there is no scientific support for such claimed benefits and because studies demonstrate that the statements are false.  The FAC also alleges that a statement on the label of two Class Products that a "loading" phase is not required is misleading and that the products do not provide any benefit without a loading phase.

Based on these two categories of wrongdoing, the FAC asserts claims for violation of (1) California's Unfair Competition Law (the "UCL"); (2) California's False Advertising Law (the "FAL"); (3) California's Consumer Legal Remedies Act (the "CLRA"); and (4) Illinois's Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), and (5) a breach of warranty claim.  Plaintiffs want to represent a class of purchasers of the products they purchased as well as other MusclePharm products (collectively with the products purchased by Plaintiffs, the "Class Products").[1]

---

[1] The FAC defines the "Class Products" as (1) MusclePharm Arnold Schwarzenegger Series Iron Pump Pre-Workout Powder, (2) MusclePharm Arnold Schwarzenegger Series Iron Cre3 Creatine Powder, (3)

## II.    Legal Standard

In most cases, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Here, however, all of Plaintiffs' statutory claims are based on alleged fraud and are therefore subject to the heightened pleading standard under Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud."  Fed. R.Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford*

---

MusclePharm Creatine Supplement, (4) MusclePharm Arnold Schwarzenegger Series Iron Dream Nighttime Support Powder, (5) MusclePharm Arnold Schwarzenegger Series Iron Test, (6) MusclePharm Arnold Schwarzenegger Series Iron Mass, and (7) MusclePharm Assault Pre-Workout Powder.  [Doc. No. 26 at ¶ 1.]  However, the class definition in the FAC does not include purchasers of MusclePharm Arnold Schwarzenegger Series Iron Test and MusclePharm Arnold Schwarzenegger Series Iron Mass, [*Id.* at ¶ 42], and neither of the named plaintiffs purchased these products, so the Court does not consider these two products to be Class Products or the FAC to be asserting any claims with respect to them.

*Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and ellipses omitted).  "Averments of fraud must be accompanied by the *who, what, when, where, and how* of the misconduct charged."  *Id.* at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (*emphasis* added; internal quotation marks omitted).  Thus, when a plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth *what* is false or misleading about a statement, and *why* it is false."  *Vess*, 317 F.3d at 1106 (*emphasis* added; citation omitted).

Rule 9(b)'s heightened pleading requirements serve "three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'"  *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)) (brackets omitted).

### III.   Request for Judicial Notice

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201. MusclePharm asks the Court to take judicial notice of three categories of documents: (1) copies of the labels for the Class Products [Doc. No. 29-4]; (2) publications about two scientific studies referenced in the FAC [Doc. No. 29-3]; and (3) a pleading from another matter that Plaintiffs reference in the FAC [Doc. No. 29-2].  Plaintiffs did not file an opposition to this request.

"Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging."  *Sandoval v. PharmaCare US, Inc.*, 145 F.Supp. 3d 986, 992 (S.D. Cal. 2015).  Plaintiffs admit that the labels attached to

MusclePharm's motion are "the very labels described in Plaintiffs' complaint." [Doc. No. 34 at 28.]   Accordingly, in the absence of opposition from Plaintiffs, MusclePharm's request is granted with respect to the labels of the Class Products.

As for the publications, although MusclePharm asks the Court to take judicial notice, it cites to Ninth Circuit case law concerning the "incorporation by reference" doctrine, which allows a court to "look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation omitted).  "Specifically, courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.  A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (internal quotation marks, brackets, and citation omitted).

The case-law is unclear as to whether the "incorporation by reference" doctrine is a basis for taking judicial notice of a document or simply an independent basis for allowing a district court to consider documents outside of the pleadings on a motion to dismiss without converting it to a motion for summary judgment. *Compare Sandoval*, 145 F.Supp. 3d at 992 (declining to take judicial notice of publications but considering them as part of the complaint under the incorporation by reference doctrine), *with McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1232-33 (E.D. Cal. 2014) (taking judicial notice of documents pursuant to the incorporation by reference doctrine); *see also United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (treating incorporation by reference and judicial notice as separate grounds for considering documents outside of the complaint on a motion to dismiss).  In the present context, this may be a distinction without a difference. Because (a) there is no dispute that the FAC alleges the contents of the publications, (b) the publications are central to Plaintiffs' claims, and (c) Plaintiffs do not question the authenticity of the copies attached to MusclePharm's motion, the Court will consider the publications in connection with the instant motion.  *See Daniels-Hall*, 629 F.3d at 998

("Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.") (internal quotations and citation omitted).

As for the pleading from another matter, the Court did not consider it in connection with the instant opinion, so MusclePharm's request for judicial notice of that document is denied as moot.

## IV.    Article III Standing for Injunctive Relief

Although MusclePharm does not specifically ask for dismissal based on lack of subject matter jurisdiction, "Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action . . . ." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). Federal courts' jurisdiction is limited to "actual cases or controversies" and "standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

"A plaintiff must demonstrate standing for each form of relief he seeks.   A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 191-92 (2000)).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of demonstrating that they have standing to seek injunctive relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A plaintiff must satisfy three requirements to have standing for injunctive relief in federal court.  "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection

between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks, brackets and citation omitted).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Thus, to have standing to seek prospective injunctive relief, a plaintiff "must establish a real and immediate threat of repeated injury." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and citation omitted).

Here, there is no chance of the Plaintiffs suffering repeated injury as a result of MusclePharm's alleged false and misleading statements about the Class Products.  Nor are there any allegations that Plaintiffs intend to purchase Class Products in the future. Moreover, the Supreme Court's recent *Spokeo* opinion indicated that statutes granting a private right to sue, such as the state laws under which Plaintiffs bring claims here, cannot erase Article III's standing requirement.  *Spokeo*, 136 S.Ct. at 1547-48.  Accordingly, Plaintiffs lack Article III standing to seek injunctive relief on behalf of themselves or on behalf of a class.  *See generally Frenzel v. AliphCom*, 76 F.Supp. 3d 999, 1015 (N.D. Cal. 2014) ("A plaintiff who is not himself entitled to seek injunctive relief may not represent a class that seeks such relief.").  Accordingly, Plaintiffs' request for injunctive relief is dismissed with prejudice.

## V.  Private Enforcement of FDCA

All of Plaintiffs' claims except for their express warranty claim are premised, at least in part, on MusclePharm's alleged violation of the FDCA's 75-day premarket notice requirement for dietary supplements containing new dietary ingredients.  Specifically, the FDCA states:

A dietary supplement which contains a new dietary ingredient shall be deemed adulterated under section 342(f) of this title unless it meets one of the following requirements:

> (1) The dietary supplement contains only dietary ingredients which have been present in the food supply as an article used for food in a form in which the food has not been chemically altered.

> (2) There is a history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary supplement will reasonably be expected to be safe and, at least 75 days before being introduced or delivered for introduction into interstate commerce, the manufacturer or distributor of the dietary ingredient or dietary supplement provides the Secretary with information, including any citation to published articles, which is the basis on which the manufacturer or distributor has concluded that a dietary supplement containing such dietary ingredient will reasonably be expected to be safe.

21 U.S.C. § 350b(a). "New Dietary Ingredient," as used in this section, is defined as "a dietary ingredient that was not marketed in the United States before October 15, 1994 and does not include any dietary ingredient which was marketed in the United States before October 15, 1994." *Id.* at § 350b(d). Section 342(f), meanwhile, explains when a dietary supplement shall be deemed to be "adulterated":

> (1) If it is a dietary supplement or contains a dietary ingredient that--

> > (A) presents a significant or unreasonable risk of illness or injury under--

> > > (i) conditions of use recommended or suggested in labeling, or

> > > (ii) if no conditions of use are suggested or recommended in the labeling, under ordinary conditions of use;

> (B) is a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury;

> (C) the Secretary declares to pose an imminent hazard to public health or safety, except that the authority to make such declaration shall not be delegated and the Secretary shall promptly after such a declaration initiate a proceeding in accordance with sections 554 and 556 of Title 5 to affirm or withdraw the declaration; or

(D) is or contains a dietary ingredient that renders it adulterated under paragraph (a)(1) under the conditions of use recommended or suggested in the labeling of such dietary supplement.

In any proceeding under this subparagraph, the United States shall bear the burden of proof on each element to show that a dietary supplement is adulterated. The court shall decide any issue under this paragraph on a de novo basis.

21 U.S.C. § 342(f).

The FAC alleges that the Class Products were "adulterated" because they contain "New Dietary Ingredients," and that MusclePharm did not comply with the 75-day premarket notice requirement from § 350b(a). As a result, according to the FAC, MusclePharm's sales of the Class Products were illegal and violated various California and Illinois consumer protection statutes.

MusclePharm argues that Plaintiffs' claims related to the 75-day premarket notification requirement are an impermissible attempt to privately enforce the FDCA. The FDCA specifies that all "proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). "Courts have generally interpreted this provision to mean that no private right of action exists to redress alleged violations of the FDCA." *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 305 (C.D. Cal. 1996). Plaintiffs respond that they are not trying to enforce the FDCA, but instead are suing under state laws that they contend make violations of the FDCA independently actionable. The Court is not persuaded.

Plaintiffs do not cite to any California or Illinois laws that impose a similar 75-day premarket notice requirement or that adopt the FDCA's notice requirement. Instead, Plaintiffs point to state laws adopting the FDCA's food labeling regulations and prohibiting the sale of "adulterated" products. *See generally* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the

food labeling regulations of this state."). The 75-day premarket notice requirement, however, is not a "food labeling regulation." Moreover, California and Illinois define "adulterated" differently than the FDCA,[2] and the FAC only alleges that the Class Products are "adulterated" under federal regulations, not under these state laws. [Doc. No. 26 at § IV.A.] Further, the FAC alleges only that MusclePharm violated the FDCA, but not any identical state laws, by failing to comply with this 75-day premarket notice requirement. In sum, the 75-day premarket notice requirement is an FDCA requirement that has not been adopted by California or Illinois.

Plaintiffs' attempt to hold MusclePharm liable for this alleged violation of the FDCA via California and Illinois[3] consumer protection statutes and unfair competition laws, but "[a] court may not allow a plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999)). Here, "Section 337(a) of the FDCA bars private enforcement of the statute." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010); *see also* 21 U.S.C. § 337(a). Thus, "plaintiffs may not use . . . state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA." *In re Epogen & Aranesp Off–Label Mktg. & Sales Practices Litig.*, 590 F.Supp.2d 1282, 1290–91 (C.D. Cal. 2008); *see also Goldsmith v. Allergan, Inc.*, No. CV 09-7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011) (stating that § 337(a) "not only prohibits a plaintiff from expressly seeking to enforce the FDCA, but also from using state unfair competition laws as a vehicle to bring a private

---

[2] *See, e.g.,* Cal. Health & Safety Code § 110545 ("Any food is adulterated if it bears or contains any poisonous or deleterious substance that may render it injurious to health of man or any other animal that may consume it. The food is not considered adulterated if the substance is a naturally occurring substance and if the quantity of the substance in the food does not render it injurious to health."); 410 Ill. Comp. Stat. Ann. 620/10 (detailing when a food is adulterated).

[3] In their briefs, the parties do not differentiate the ICFA claim or argue that it should be evaluated differently from the California statutory claims, so the Court does not analyze that claim differently.

cause of action that is based on violations of the FDCA"); *Anthony v. Country Life Mfg., L.L.C.*, No. 02 C 1601, 2002 WL 31269621, at *3 (N.D. Ill. Oct. 9, 2002) (dismissing ICFA claim based on marketing of products allegedly containing non-FDA approved ingredients as "unmistakably one for direct enforcement of the FDCA, for which no private right of action exists").

Plaintiffs' claims premised on allegations that MusclePharm's sale of the Class Products was illegal because it did not provide premarket notice are an improper attempt to enforce the FDCA, and not, as Plaintiffs argue, an attempt to enforce a California or Illinois state requirement.  In other words, the alleged failure to comply with the 75-day notice requirement does not violate any state laws; it only violates the FDCA.[4]  The FDCA, however, bars private enforcement, and Plaintiffs may not plead around this bar using state consumer protection statutes.  Accordingly, Plaintiff's claims are dismissed to the extent they are premised on a violation of the 75-day premarket notice requirement or on allegations that sales of the Class Products were illegal as a result of the violation of this requirement.[5]

## VI.   Claims for Misrepresentations on Class Product Labels

In addition to the alleged violations of the FDCA's 75-day premarket notice requirement, all the FAC's statutory claims are also premised on alleged misleading statements on the labels on the Class Products.  Courts often analyze claims for violations of consumer protection statutes "together because they share similar attributes." *In re Sony*

---

[4] *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), and other cases cited by Plaintiffs are distinguishable because the plaintiffs' consumer protection statute claims were predicated on violations of state laws that imposed identical requirements as the FDCA. *See also Hesano v. Iovate Health Sciences, Inc.*, 13cv1960-WQH-JMA, 2014 WL 199719, at *6 (S.D. Cal. Jan. 15, 2014) (UCL claims predicated on violation of FDCA labeling laws that were adopted by California's Sherman law).  Indeed, in *Farm Raised Salmon Cases*, the California Supreme Court specifically distinguished cases cited by the defendants because all of the cases "rejected claims or defenses because they were based on violations of the FDCA itself." *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1097.

[5] In light of this determination, the Court need not address MusclePharm's alternative argument that Plaintiffs' claims based on the 75-day premarket notice requirement are barred by the primary jurisdiction doctrine.

*Gaming Networks & Customer Data Security Breach Litig.*, 996 F.Supp. 2d 942, 985 (S.D. Cal. 2014).  As the *Sony* court explained:

> The UCL prescribes business practices that are 'unlawful, unfair or fraudulent," Cal. Bus. & Prof. Code § 17200, the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500, and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "standard, quality, or grade" of a particular good or service, Cal. Civ. Code § 1770(a). Under the UCL and FAL a plaintiff may only recover restitution and injunctive relief, whereas a plaintiff's recovery under the CLRA is not so limited.

*Id.* at 985-86.

Here, most of the differences in the pleading requirements for these statutory claims are not relevant to the instant motion.  Although the FAC purports to assert separate claims under each of the "unlawful," "unfair," and "fraudulent" prongs of the UCL, the entire complaint is premised on the same alleged misrepresentations, meaning all of the UCL, CLRA, FAL, and ICFA claims are grounded in fraud and must be pled with particularity pursuant to the heightened pleading standards in Rule 9(b).[6]  Plaintiffs do not argue to the contrary, and neither side makes any distinction among the claims in their arguments for or against dismissal.  Accordingly, the Court will analyze these claims together.

## A.   Statutory Standing

"[T]o have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that

---

[6] *See, e.g., Kearns*, 567 F.3d at 1125 ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.") (citing *Vess*, 317 F.3d at 1103–06); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp. 2d at 967 ("Rule 9(b)'s heightened pleading standards apply equally to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud."); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012) (holding that UCL claim based on alleged misrepresentations on a product label fell under the "fraud" prong of the UCL despite the plaintiff pleading the claim under the unlawful and unfair prongs); *see also Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014) (holding that Rule 9(b) applied to ICFA claims based on fraudulent sales techniques notwithstanding use of language of "unfairness" instead of "misrepresentation").

they relied on the misleading materials." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-4184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2103).  "A plaintiff is not permitted to support a claim alleging misleading product packaging with statements that he never read or relied upon when making his purchase." *Id*. (internal quotation marks omitted).  Similarly, although reliance on a misrepresentation is not an element under the ICFA, ICFA claims require proximate causation of damages, which includes proof that the plaintiff received, either directly or indirectly, the misleading material.  *See Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 514 (6th Cir. 2015).  Here, Plaintiffs allege that they were exposed to and relied on statements on the packaging of the products they purchased.  Thus, Plaintiffs have statutory standing to the extent their claims are based on alleged misrepresentations on the labels.

On the other hand, the FAC also references marketing, materials, advertisements and "other inducements" [Doc. No. 26 at ¶¶ 25, 30, 52, 53, 76, 81] as containing actionable misrepresentations and appears to premise the statutory claims on these alleged misrepresentations as well.  There are no allegations in the FAC that Plaintiffs ever saw any these materials.  Necessarily, if Plaintiffs did not see an advertisement, they could not have relied on any false statements therein.   Thus, Plaintiffs lack standing for their misrepresentation claims based on statements in these other materials.  To the extent Plaintiffs' claims are premised on misrepresentations appearing somewhere other than the label of a Class Product, the claims are dismissed without prejudice.

## B.    Lack of Substantiation

The FAC identifies several alleged false misrepresentations that appeared on the labels of the Class Products, and alleges that Plaintiffs relied on these representations.  However, pursuant to Rule 9(b), a plaintiff must set forth what is false or misleading about these statements and why they are false.  *Vess*, 317 F.3d at 1106.  The FAC alleges that these statements are not substantiated by any studies and that some studies reach the opposite conclusion.  Yet, none of the studies in the FAC demonstrate the falsity of any statements on the labels of the Class Products.

"It is well settled that private litigants may not bring claims on the basis of a lack of substantiation." *Aloudi v. Intramedic Research Grp., LLC*, Case No. 15-cv-882, 2015 WL 4148381, at *3 (N.D. Cal. Jul. 9, 2015); *Stanley v. Bayer Healthcare LLC,* No. 11-CV-862 IEG BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) ("Private individuals may not bring an action demanding substantiation for advertising claims."). More specifically, "[c]laims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws." *Bronson*, 2013 WL 1629191, at *8; *see also Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 291 (2006) (affirming dismissal of ICFA claim and noting: "[m]erely because a fact is unsupported by clinical tests does not make it untrue.").[7]

"A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false." *Bronson*, 2013 WL 1629191, at *8. "In contrast, a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Id.*; *see also Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012) ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an "unsubstantiated" claim is only the former.").

Determining whether the FAC alleges studies demonstrating the falsity of statements

---

[7] Under Illinois law, "an advertisement may be fraudulent if the ad lacks substantiation, but only when the claim at issue implies that support—any support—exists for the claim when there is none." *Greifenstein v. Estee Lauder Corp.*, No. 12-CV-09235, 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) ("[A] lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made." (citation omitted)). The FAC does not identify any representations on the Class Product labels that studies support the allegedly false descriptions of the products' benefits. Thus, Plaintiffs' ICFA claim may not survive even if Plaintiffs could identify a study yielding results contrary to those represented on the product label.

on the Class Product labels is complicated by the fact that the FAC frequently summarizes or recharacterizes the alleged misrepresentations appearing on the labels of the Class Products and only includes portions of three of the Class Product labels in the text.  This lack of specificity is a separate ground for dismissal (*see infra* at VI.C.), and it also makes it more difficult to assess which statements are contradicted by scientific studies according to Plaintiffs.  For example, paragraph 21 of the FAC alleges that one Class Product called "Assault" "advertises the benefits of its Creatine Nitrate and Arginine Nitrate on the Label of the Product," and then includes an image of part of the product label.  However, although the label lists the ingredients of the "Ion-3 Nitrate Technology Matrix" which includes Creatine Nitrate and Arginine Nitrate, among other ingredients, the label does not state any benefits of either of these two specific substances in isolation.  Rather, the label touts the benefits of the Ion-3 Nitrate Technology Matrix as a whole, along with "Carnosyn® Beta-Alanine."  Paragraph 22 of the FAC includes portions of two other Class Product labels, neither of which make representations specific to Creatine Nitrate, as opposed to the Ion-3 Nitrate Technology or other ingredients, such as "Cinnulin®" and "5 superior creatine blends."  The Court is not required to accept as true allegations of misrepresentations on the product labels that are contradicted by the labels themselves.  *Daniels-Hall*, 629 F.3d at 998.  However, even assuming the truth of the FAC's allegations about the alleged false statements, the FAC fails to state a claim because it does not allege studies demonstrating that the statements are false.

The FAC's allegations of misrepresentations on the labels of the Class Products generally fall into three categories: (1) statements that the ingredient "Creatine Nitrate" that appears in some of the Class Products will "increase strength, power and recovery," "support muscle building & muscle growth", and "increase strength, endurance, muscle mass, and overall performance"  [Doc. No. 26 at ¶¶ 20-22]; (2) statements on two product labels that the products do not require a "loading phase" [*Id.* at ¶ 23]; and (3) statements that the ingredient "Arginine Nitrate" that appears in some of the Class Products "increases strength, endurance, muscle mass, and overall vascularity" [*Id.* at ¶ 29].  To avoid dismissal

as a lack of substantiation claim, the FAC must allege specific studies demonstrating the falsity of these alleged statements.  Although the FAC refers to some studies and research, these studies do not disprove or even relate to the alleged representations that Plaintiffs claim are false.

### 1.  Alleged Misrepresentations About the Benefits of Creatine Nitrate

First, the FAC alleges that the labels on some of the Class Products misrepresent that Creatine Nitrate increases "strength, endurance, muscle mass, and overall performance." However, the FAC also admits that "it is unknown if Creatine Nitrate confers any health benefits." [Doc. No. 26 at ¶ 24.] This admission alone ostensibly establishes that Plaintiffs are making a lack of substantiation claim.  That it is unknown whether Creatine Nitrate provides health benefits implies that it is unknown whether Creatine Nitrate increases "strength, endurance, muscle mass, and overall performance."  To survive a motion to dismiss, the FAC must allege studies showing that Creatine Nitrate does not "increase strength, endurance, muscle mass, and overall performance" not simply that there is no information one way or the other. *Bronson*, 2013 WL 1629191, at *8.  None of the studies mentioned in the FAC satisfy this requirement.

The FAC does not cite any study showing that Creatine Nitrate does not provide any benefits.  Instead, the studies on which Plaintiffs rely concern either the safety of Creatine Nitrate or the efficacy of Creatine *Monohydrate*.  The first study mentioned in the FAC was summarized in an article titled "28 days of Creatine Nitrate supplementation is apparently safe in healthy individuals." [Doc. No. 29-3.]  As reflected in its title, the study concerned whether Creatine Nitrate is safe, not whether it is effective.  The study specifically notes that additional research is needed to determine whether Creatine Nitrate is effective.  Thus, this study does not demonstrate the falsity of any alleged statements on the Class Product labels, even assuming those representations concerned the benefits of Creatine Nitrate in isolation, as opposed to the product as a whole. *Cf. Bronson*, 2013 WL 1629191, at *8 ("A plaintiff's reliance on . . . inconclusive, rather than contradictory, evidence is not sufficient to state a claim.").

The FAC also cites several studies on Creatine Monohydrate and alleges that such studies demonstrate that Creatine Nitrate is not more effective than Creatine Monohydrate. However, none of the Class Product labels make any comparative representations between Creatine Nitrate and Creatine Monohydrate.  Indeed, several of the Class Products even contain Creatine Monohydrate along with Creatine Nitrate.  Moreover, none of the studies cited in the FAC compare the benefits of Creatine Nitrate and Creatine Monohydrate or conclude that Creatine Monohydrate is more effective.

Further, the FAC admits that "Creatine Nitrate [] is not the same as Creatine Monohydrate."  [Doc. No. 26 at ¶ 24.]  Thus, the studies cited in the FAC, all of which solely address the efficacy of Creatine Monohydrate, are no more relevant to demonstrating the falsity of statements about the efficacy of Creatine Nitrate than studies about the health benefits of apples would be relevant to demonstrating the falsity of statements about the health benefits of oranges.

Accordingly, because none of the studies cited in the FAC demonstrate the falsity of any of the alleged false statements on the Class Product labels about Creatine Nitrate, Plaintiffs' statutory claims based on such statements are dismissed as improper lack of substantiation claims.  *See generally Murray v. Elations Co.*, No. 13-CV-02357-BAS WVG, 2014 WL 3849911, at *7 (S.D. Cal. Aug. 4, 2014) ("[T]he cited studies must have a bearing on the truthfulness of the actual representations made by Defendants."); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2013 WL 195769, at *4 (N.D. Ill. Jan. 16, 2013) (dismissing ICFA claim because the plaintiff "failed to make any connection between the clinical studies that he cites and the actual representations appearing on the . . . product label).

### 2.  Alleged Misrepresentations About Not Needing a Loading Phase

Next, the FAC alleges that a statement on the labels of two of the Class Products that a "loading phase" is not needed is false.  The FAC, however, does not cite to any scientific studies supporting this allegation.  Instead, the FAC cites to several scientific publications allegedly finding that Creatine Monohydrate is approximately 100% absorbed into the

bloodstream, and other research allegedly determining that the lack of a loading phase for Creatine Monohydrate "may have accounted for" the lack of an increase in performance in test subjects as compared with subjects that did use a loading phase.  None of these studies tested either of the two Class Products on whose labels these alleged misrepresentations appeared, both of which contain numerous ingredients.[8]  Accordingly, the studies alleged in the FAC do not overcome MusclePharm's argument that the loading phase claims are improper lack of substantiation claims.  The FAC's statutory claims are therefore dismissed to the extent they are premised on allegedly false statements about the need for a loading phase.

### 3.  Alleged Misrepresentations About the Benefits of Arginine Nitrate

The FAC's claims based on alleged misrepresentations about the benefits of Arginine Nitrate are similar to the allegations about Creatine Nitrate.  The FAC alleges that MusclePharm markets Arginine Nitrate, an ingredient in some of the Class Products, as having "some benefit over raw Arginine and/or Arginine peptides found in regularly marketed amino acid or protein supplements."  [Doc. No. 26.]  However, no such statements appear on any of the Class Product labels.  Moreover, even assuming Plaintiffs could plead such statements with particularity, claims premised on the statements would still be subject to dismissal as lack of substantiation claims.  The only scientific study cited in the FAC compared the effects of Arginine Nitrate with raw Arginine and Arginine peptide.  This study therefore does not support any allegations that statements about the efficacy of the Assault Powder or the Iron Pump Powder, in which Arginine Nitrate is just one of many ingredients, are false.  Accordingly, Plaintiff's claims based on alleged misrepresentations about Arginine Nitrate are dismissed.

---

[8] The label of MusclePharm's Creatine Supplement states that it contains Creatine Monohydrate, Creatine Nitrate, several other forms of Creatine, and something called "Cinnulin PF®". [Doc. No. 29-4 at 8.] The label of Arnold Schwarzenegger Series Iron Cre3 Creatine Powder, meanwhile, states that it contains vitamin C, a "vitamin E blend," calcium, Creatine Nitrate, and a "Hydrafuel Matrix" consisting of Taurine, Coconut, Water Powder, and L-Glutamine.  [*Id.* at 12.]

### C.     Pleading with Particularity

The product label misrepresentation claims in the FAC are also subject to dismissal under Rule 9(b).  As discussed above, all of Plaintiffs' statutory claims are fraud based, meaning the FAC was required to allege "the *who, what, when, where, and how* of the misconduct charged."  *Kearns*, 567 F.3d at 1124.  The FAC does not do this.

In particular, the FAC only alleges that Plaintiffs relied on misrepresentations on the Class Product labels.  However, the FAC focuses on numerous purported false statements that do not appear on any of the product labels submitted by MusclePharm with its motion. Indeed, there are no statements on any of the Class Product labels that Creatine Nitrate is better than Creatine Monohydrate, or that Arginine Nitrate is better than other forms of Arginine.  If Plaintiffs' claims are premised on purported misrepresentations to that effect, they must allege exactly what MusclePharm said, where the statement appeared, when Plaintiffs saw and relied on the statement, and identify scientific studies demonstrating the falsity of the statement.  *Cf. Bruaner v. MusclePharm Corp.*, No. CV 14-8869 FMA (AGRx), 2015 WL 4747941, at * (C.D. Cal. Aug. 11, 2015) (dismissing fraud-based UCL, CLRA, and FAL claims based on statements made in "other marketing, advertising, or packaging materials" for lack of specificity).

The Court will grant Plaintiffs leave to file a second amended complaint.  However, the Court is skeptical that Plaintiffs can remedy the deficiencies in the FAC if Plaintiffs only saw and relied on statements contained on the product labels because, having considered the labels themselves in connection with this motion, it is questionable whether the labels contain any representations that do not constitute puffery or that could be scientifically proven to be false.  Nevertheless, if Plaintiffs choose to amend, to survive dismissal the complaint must do all of the following, if possible within the confines of Rule 11:

    (i)     Quote the exact alleged misrepresentation;

    (ii)    For each written statement, identify the specific product label(s), advertisement(s) or other materials containing the statement;

(iii)   For each statement related to a product Plaintiffs purchased, specify when and where Plaintiffs saw and relied on the statement;

(iv)   For each statement related to a product Plaintiffs did not purchase, specify why the product and misrepresentation are sufficiently similar to the products Plaintiffs purchased for Plaintiffs to have standing to represent a class including purchasers of these products Plaintiffs themselves did not purchase; and,

(v)   For each statement, specify exactly why the statement is allegedly false by citing to scientific studies or other credible evidence demonstrating the falsity of the statement.  As discussed herein, such studies must directly contradict the statement at issue.

## VII.   Breach of Express Warranty Claim

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."  *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013).[9]   Although reliance is not an element, "to establish that the defendant's statement formed the 'basis of the bargain,' the plaintiff must allege facts showing the plaintiff was *exposed* to the statement at the time of purchase of the product."  *Giglio v. Monsanto Co.*, No. 15CV2279 BTM(NLS), 2016 WL 1722859, at *5 (S.D. Cal. Apr. 29, 2016) (emphasis in original).

Here, the FAC does not allege that Plaintiffs were exposed to any statements aside from those on the labels of the Class Products they purchased, so only statements on the

---

[9] The elements of a breach of warranty claim in Illinois are similar: "a plaintiff must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise. Further, in general, a plaintiff must state the terms of the warranty or attach it to the complaint."  *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

Class Product labels can satisfy the second element of this claim.  The FAC, however, fails to allege which statements from those labels constituted promises forming the basis of the bargain.[10]  Likewise, because Plaintiffs did not personally experience a lack of promised benefits (they did not use the products), and because the studies referenced in the FAC do not demonstrate the falsity of any statements on the product labels, the FAC fails to allege any facts demonstrating that any warranties were breached.  Accordingly, for many of the same reasons the other claims fail, the breach of warranty claim is dismissed as well.

## VIII.  Conclusion

In light of the foregoing, MusclePharm's motion to dismiss is **GRANTED**.  Plaintiffs' claims premised on a failure to comply with the FDCA's 75-day premarket notice requirement and requests for injunctive relief are **DISMISSED WITH PREJUDICE**.  Plaintiffs' claims premised on misrepresentations on the labels of the Class Products are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may file a second amended complaint consistent with the instructions herein and the requirements of Federal Rule of Civil Procedure 11 on or before **October 19, 2016**.

It is **SO ORDERED**.

Dated:  September 26, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[10] This claim in the FAC generally refers to the labels as a whole, and then alleges that Plaintiffs would not have purchased the Class Products had they known "the true nature of the Product's protein content and what the Product contained."  [Doc. No. 26 at ¶105.]  The FAC, however, does not make any allegations of warranties about any of the Class Products' protein content.  "Plaintiffs' vague allegation concerning 'product labels' cannot support a claim for breach of warranty.  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012).